CAMILA FUENTES ET AL., Plaintiffs and Appellees, *v.* HEIRS OF FRANCISCA FUENTES and ENCARNACIÓN FUENTES WIDOW OF SUÁREZ ET AL., Defendants and Appellants the latter. CAMILA FUENTES ET AL., Plaintiffs and Appellees, *v.* HEIRS OF FRANCISCA FUENTES, ETC. and JUAN AGUILÓ FORTEZA, Defendants and Appellant the latter.

Nos. R-63-60, R-63-61.    Decided May 31, 1967.

*Víctor Gutiérrez Franqui, Federico Ramírez Ross, Carlos G. Látimer, Luis Fernández Ramírez,* and *Ramírez, Segal & Látimer* for appellants. *R. R. Rivera Correa* for appellees. *Ángel Roberto Díaz* for Juan Aguiló Forteza. *Víctor A. Coll* for appellants Juan Suárez and Johnny Suárez Miranda.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the court.

Two are the basic questions raised in these petitions for review: (a) the condition of third-party mortgagee protected by the provisions of Art. 34 of the Mortgage Law, 30 L.P.R.A. § 59,[1] claimed by Father Juan Aguiló Forteza; and (b) the validity of the summary foreclosure proceeding instituted by Marcial Suárez and his wife Encarnación Fuentes for the collection of a mortgage credit constituted by Pascasio Fuentes López, plaintiffs' predecessor, on two rural properties located in Loíza.

---

[1] "Notwithstanding the provisions of the foregoing article, instruments or contracts executed or entered into by a person who, according to the registry, has a right to do so, shall not be invalidated with regard to third persons after they have been recorded, even though the interest of such party should subsequently be annulled or terminated by virtue of a prior deed which was not recorded or for reasons which do not clearly appear from said registry.

"Only by virtue of a recorded instrument may another later instrument, also recorded, be invalidated to the prejudice of a third person, with the exceptions mentioned in article 389.

"The provisions of this article shall at no time apply to an instrument recorded in accordance with the provisions of article 390, unless prescription has validated and assured the interest to which said instrument refers."

# I

As a consequence of the adjudication made in the fore-closure proceeding instituted by the creditors Suárez Fuentes, the Registrar of the Property made, on May 28, 1936, the third entry of property No. 845 of the district of Loíza, which in its pertinent part reads as follows:

"3d. *Rural:* in the ward Medianía Alta of Loíza, described in the first entry, as in the document now presented. It is encumbered by the mortgage comprised in the second entry which will be canceled by this one. Pascasio Fuentes López, *being a widower* acquired this property, by the second entry. In civil case twenty-one thousand five hundred twenty-six, instituted in the District Court of the Judicial District of San Juan, by Marcial Suárez Suárez and his wife Encarnación Fuentes, of legal age, proprietors, residents of Loíza, *against John Doe and Richard Roves, as unknown heirs of Pascasio Fuentes López,* for the collection of a mortgage credit, *demand for payment having been made upon the person in charge of the mortgaged property, that is, Francisca Fuentes, a daughter of the said Pascasio Fuentes López,* to pay, within the term of thirty days, as of the date of the process, . . . the mortgage credit claimed; and the term fixed having expired, without the defendants having paid the amounts claimed in the proceeding . . . . By virtue thereof I record the ownership of the property of this number, in favor of Marcial Suárez Suárez . . . ."

The trial court concluded that the successive acquirers, and specifically the present owner and possessor, Father Juan Aguiló Forteza, were not third-party mortgagees to whom the registration protection was available on the ground that the cause of nullity of the foreclosure proceeding—the failure to publish edicts in a circulating newspaper demanding payment from the unknown heirs of the mortgagor—appears clearly from the previous entry.[2] Appellants maintain, on their part, that Father Aguiló has such condition

---

[2] In the third entry of the other mortgaged property reference is expressly made to the one above-copied.

because the deed of sale by virtue of which he acquired title of both properties was executed by a person who appeared in the registry to have a right to do so and that the causes for nullity or resolution of the transferor's right do not clearly appear from the registry itself.

It is necessary to set forth the pertinent facts in order to dispose of this contention. Father Aguiló acquired the real property by deed No. 12 of July 10, 1958 before Notary Ángel Roberto Díaz. At that time it was not recorded in the name of the vendors, Francisco Garay Cruz and his sons Gustavo Adolfo and César Augusto Garay Fuentes, but in the name of their predecessor, Francisca Fuentes Garay, who obtained it from the foreclosing creditors spouses Suárez Fuentes. It is not until October 26, 1959 that the Garays' title is presented for registration, which is recorded on the following December 15. On July 10, 1958, to be exact the 7th prior thereto, the suit for the nullity of the summary foreclosure had already been filed, and *on the same date* a petition for *lis pendens* had been presented, which was finally entered on November 24, 1958.

From the foregoing the following consequences are obtained: (1) when Father Aguiló purchased, (a) the properties were not recorded in the name of their immediate transferors, but in the name of their predecessor; (b) already in the registry, a document, which affected the title transferred to him, had been presented for consideration; and (2) when Father Aguiló's title was recorded on December 15, 1959, the notice of appellees' complaint appeared recorded.[3]

---

[3] It is advisable to point out that the action for nullity was brought on July 7, 1958 and that the unknown purchaser of the properties, which by information was identified as "Guadalupe Catholic Church", of which appellant, Father Aguiló was the parson, was joined as defendant; that on August 11 an amended complaint was filed in which Father Aguiló was made a party and that he was summoned next day.

Therefore, at the time Father Aguiló presented his title for registration, he had already personal knowledge of the existence of the alleged causes of nullity.

■■ From the foregoing recital it clearly appears that when the deed of sale was executed in favor of Father Aguiló on July 10, 1958, appellees' notice of *lis pendens* alleging the causes for nullity of the title had already been presented three days before. The claim casting a shadow on the title of the transferor from whom protection was claimed as third-party mortgagee had entered the sphere of registration. *Zalduondo* v. *Iturregui*, 83 P.R.R. 1, 33–35 (1961). Under these circumstances he cannot avail himself of such protection.[4]

■ In order to circumvent the consequences of the registration situation set forth, Father Aguiló claims that although the contract of sale was made a public deed on July 10, the meeting of the minds on the object and consideration had taken place on the previous June 5. It is true that the evidence shows that as of that date the vendee took immediate possession of the properties and performed acts of perfect ownership, such as the giving of bonds for the installation of public utilities, the commencement of works to construct buildings, the use of the real property for recreational activities for the purpose of collecting funds for the parish he directs. But all of this is immaterial. The condition of third person should be judged here considering the true date of the acquisitive title which is the one which can oppose the claims of other persons who did not take part in the contract and the right should always be grounded on a recorded title in order to enjoy the benefit or exception

---

[4] It has been repeatedly held that a person who has acquired title directly from one who, at the time of its execution, does not appear in the Registry to have a right to execute it is not a third-party mortgagee. *Monserrate* v. *Lopés*, 80 P.R.R. 476, 487 (1958); *Pérez* v. *Cancel*, 76 P.R.R. 625, 633 (1954); *Olmedo* v. *Balbín*, 69 P.R.R. 547, 551 (1949). In view of the registration situation described we need not decide whether this doctrine is applicable in the instant case wherein, although the title did not appear recorded in favor of the immediate transferors, it was recorded in the name of their predecessor.

of Art. 34 subject to the condition that the cause of nullity does not clearly appear from the record annulled. *Lizardi* v. *Caballero*, 65 P.R.R. 77, 83 (1945).

Under the circumstances pointed out it is unnecessary to determine whether the cause of nullity or the defect clearly appeared from or was explicitly stated in the registry. See *Rubio* v. *Roig*, 84 P.R.R. 331, 342–344 (1962); *Rodríguez* v. *Heirs of Pirazzi*, 89 P.R.R. 494 (1963), and particularly, *Menéndez* v. *Cobb et al.*, 28 P.R.R. 725, 730 (1920).

## II

Devoid of the protection of the Mortgage Law, Father Aguiló holds only the standing of third-party under the Civil Code. We must then examine whether the title of his transferors was affected by nullity, irrespective of his knowledge thereof.

On September 1, 1934, the mortgagee, Marcial Suárez, filed an action to foreclose his credit by way of summary proceeding against John Doe and Richard Roe, unknown heirs of Pascasio Fuentes López, of unknown domicile. In the fourth averment of the initial petition the mortgagor's death was set forth, "leaving some heirs whose names and domiciles are unknown to plaintiffs, but Francisca Fuentes being at present in charge of the two mortgaged properties." The petition ends with the prayer that said defendants be served with process or in default thereof the person or persons in possession or in charge of said mortgaged properties. The writ demanding payment authorizes the marshal, pursuant to Arts. 128 of the Mortgage Law, and 169 and 170 of the Mortgage Regulations, to serve process upon John Doe and Richard Roe, unknown heirs of Pascasio Fuentes López, or in default thereof upon the person in charge of the mortgaged property.

The notice of the demand was directed to John Doe and Richard Roe, unknown heirs of Pascasio Fuentes López,

and to Francisca Fuentes, persons allegedly in charge of the mortgaged properties. The marshal's return states that demand was made personally upon Francisca Fuentes "who is at present the person in charge of the mortgaged property in her capacity of co-owner of said property and as heiress of the estate of Pascasio Fuentes López." Said official certified also that on the date of the service of process he had posted copies thereof on the bulletin board of the District Court of San Juan, in the city hall of Canóvanas, and in a house and store located in one of the properties subject to foreclosure.

No edicts were published to notify the unknown heirs.

The order of sale having been entered, and the corresponding public auction having been held, the properties were awarded on December 24, 1934[5] to the foreclosing creditors for one thousand dollars, one, and five hundred the other, which amount was credited to the highest value of the credit. The judicial sale was reproduced in public deed No. 1 of January 24, 1935, before notary Fulgencio Piñero. On the same date and before the same notary, by No. 2, the creditors to whom the property was awarded, spouses Suárez Fuentes, sold the properties for the "price received", equal to the amount of the award, to Francisca Fuentes.

Article 128 of the Mortgage Law, 30 L.P.R.A. § 224, and Art. 171 of the Regulations, 30 L.P.R.A. § 1092, constitute the positive law applicable to the judicial proceedings preliminary to the auction, and more specifically to the service of demand for payment. In the pertinent part they read:

Article 128.—"Demand for payment shall be made on the debtor if he resides in the place where the estate is located and if his domicile be known; otherwise it shall be sufficient to make

---

[5] The statement on the publication of the edicts was signed on December 22 but authenticated and sworn four days later, the 26, when the auction had already been held.

demand upon the person who may be in charge of the estate in any legal capacity whatsoever, in order that he may advise the owner of the demand."

Article 171.—"When all of the property mortgaged is in the possession of one person only, according to the certificate of the registrar, the demand for payment shall be served on such person at his domicile, if he resides within the municipal district where any of such property is situated. The same procedure shall be observed with regard to each of the other holders of different properties, if there be several. When any of the persons on whom demand for payment is to be made should not reside in the municipal district where any of the property is situated, the demand shall be made on the person in charge of the estate in any legal capacity whatsoever, in order that he may advise the owner thereof without delay. If the estate should be abandoned and no one in charge thereof, the demand shall be made on the administrative municipal authority of the town, with a similar direction to advise the debtor.

When the ownership of any mortgaged property should be divided, by reason of the property or direct ownership being vested in one person, and the usufruct or beneficial ownership in another, for the purpose of service of the demand, the holder in the name of all of them shall be considered the person in charge of the estate, or the person acting in the latter's stead.

If any person on whom demand for payment is to be made, appears in the certificate of the registrar as the holder of a number of mortgaged estates, and the demand is to be served on the person in charge, or on the municipal authority, the estate which, among those held by the same person, appears to have the highest value according to the deed, shall be taken into consideration, or any of those which, being of equal value, exceed the value of the rest. In the absence of any valuation, the amount of the mortgage liability shall be considered.

When the demand for payment is not served at the domicile of the person from whom payment is due, nor on an attorney in fact or lessee having charge of the estate, it shall be published in addition by means of edicts which shall be inserted in the gazette of the corresponding island, and in such case the term of 30 days shall begin to be counted from the date of the publication in said official periodical.

When the certificates of the registrar of property show the addresses of the persons interested in the liabilities which may have been recorded subsequently to the right of the petitioner, the judge shall order, at the time demand for payment is issued, that notice thereof be served on said interested persons at the addresses mentioned if found there."

■ An analysis of both provisions reveals that the Legislature established certain rules for the service of process depending on the fact of the debtor's domicile. They may be summarized as follows: (a) when the debtor resides in the place where the property is located and his domicile is known, the demand for payment is to be served upon him personally; (b) when the debtor does not reside in the municipal district where any of the property is situated, the demand shall be made on the person in charge of the property in any legal capacity, *Mestre et al.* v. *Michelena et al.*, 30 P.R.R. 142 (1922); (c) when in the latter case no one is in charge of the property because it is abandoned, the demand shall be served on the mayor of the town; and, (d) when the process is not served at the domicile of the debtor, nor on the attorney in fact or lessee in charge of the property, it shall be published *in addition* by means of edicts.

■■ Now then, the situation we are considering contains an element not foreseen in the foregoing, to wit, the death of the mortgagor. It has been expressly stated by this Court that the above-copied legal provisions do not refer to the cases where the debtor has died, but to those where the debtor does not reside in the municipal district where the mortgaged property is located. *Santiago* v. *Registrar*, 72 P.R.R. 55, 59 (1951); *Santos* v. *Registrar*, 60 P.R.R. 131 (1942); *Heirs of González* v. *Federal Land Bank*, 51 P.R.R. 454 (1937); *Arvelo et al.* v. *Banco Terr. y Agr.*, 25 P.R.R. 677 (1917). In the opinion delivered in *Arvelo*, *supra*, we expressly said at page 685:

"As will be seen, by an express statutory provision demand for payment should have been made upon Hilario Arvelo, who according to the registry, was the owner of the property mortgaged to the Banco Territorial y Agrícola, if he resided in the ward of Jayuya of the municipality of Utuado, where the mortgaged property was situated, and his domicile was known; but Hilario Arvelo having died before the summary foreclosure proceeding was begun, was it sufficient to make the demand upon the person in charge of the estate in any legal capacity whatsoever? We are of the opinion that it was not."

In these cases the debtor's heirs should be served with process personally, but default thereof because their identity or domicile is not known, the person in charge of the property in any legal capacity cannot be served, but service by publication should be resorted to. Muñoz Morales, II *Lecciones de Derecho Hipotecario* 210. *Heirs of Molina* v. *Soc. Protectora de Niños*, 61 P.R.R. 801 (1943), is not contrary to the foregoing; it implicitly admits that when service of process is to be made upon unknown heirs it should be made by publication; only that in order to do so—since it is not a summons properly speaking but partakes of the nature of a judgment by confession without going to trial first—it is not necessary to follow the procedure prescribed in § 94 of the former Code of Civil Procedure, which corresponds to Rule 4(e) in force, and specifically, that the fact need not be previously established by affidavit.[6] See F. Pérez Almiroty, *Aplicabilidad del Artículo 94 del Código de Enjuiciamiento Civil de Puerto Rico al Procedimiento Ejecutivo Hipotecario por la Vía Sumaria*, 14 *Rev. Jur. U.P.R.* 203 (1945). In

---

[6] Article 379(4) of the proposed Mortgage Code of Puerto Rico, S.B. 604 of the Fifth Legislature, provides, as was provided by § 94, that "When the person on whom the service is to be made . . . has died and the names and residences of his heirs are unknown . . . and it is thus verified to the satisfaction of the court by affidavit or by any other authentic manner or attestation, the court shall order that service be made by publication issued by its secretary and published in a newspaper of general circulation, designated by the court, once a week during four consecutive weeks . . . ."

that sense, *Bermúdez* v. *Registrar*, 70 P.R.R. 795 (1950) is likewise inapposite.

In the instant case the failure to summon the heirs is inexplicable, not only by publication, but also personally. At least the foreclosing party knew Francisca Fuentes, one of the daughters of the deceased, and it would have been easy to determine the existence of the other heirs, her brothers and sisters, plaintiffs herein. But if this were not sufficient, from the mortgagor's death certificate itself which was introduced in evidence by the creditors as proof of the former's death, which occurred on July 18, 1934, some forty days before the filing of the initial petition in the summary foreclosure proceeding, information appeared which furnished the means to determine the identity of the heirs, for it is indicated that the facts as to the deceased and the death were furnished by Isabelo Fuentes, residing at 2 Varas Street in Santurce. Isabelo Fuentes, son of the debtor, is one of the plaintiffs.

■ The trial court did not err in annulling the summary foreclosure proceeding as to seven-eighths of the properties as a result of the failure to notify the debtor's heirs by publication.

The amended judgment rendered on February 7, 1963 will be affirmed and the case will be remanded for further proceedings concerning the elucidation of the complaint against coparty filed by Father Juan Aguiló.[7]

---

[7] The contention of appellants Suárez Fuentes as to the impropriety of rendering judgment against them is untranscendental in view of the fact that the only thing which could prejudice them is the pronouncement concerning the payment of costs, and from an examination of the original record it appears that the prevailing plaintiffs did not present memorandum of costs.

Considering that we affirmed the judgment, the consequence of which is the partial eviction of the properties, the assignment on the prematureness of the complaint against coparty, of Father Aguiló against codefendants and spouses Suárez Fuentes in which the clearing of title is claimed in conformance with law, is academic.